FILED
07/25/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2022

**IN RE BOBBY G. JR.**

**Appeal from the Chancery Court for Anderson County**
**No. 20CH2407      M. Nichole Cantrell, Chancellor**

———————————————————

**No. E2021-01381-COA-R3-PT**

———————————————————

In this termination of parental rights case, Appellant/Father appeals the trial court's termination of his parental rights to the minor child on the grounds of: (1) abandonment by an incarcerated parent by failure to support and by wanton disregard, Tenn. Code Ann. §§ 36-1-113(g)(1), and 36-1-102(1)(A)(iv); and (2) incarceration as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court, Tenn. Code Ann. § 36-1-113(g)(6). Appellant also appeal the trial court's determination that termination of his parental rights is in the child's best interest. Because the relevant statutory time period is not specified in the trial court's order and in view of the sparsity of evidence, we reverse the trial court's termination of Appellant's parental rights on the ground of abandonment by an incarcerated parent by failure to support. We affirm the trial court's termination of Appellant's parental rights on the remaining grounds, and on its finding that termination of Appellant's parental rights is in the child's best interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed in Part; Affirmed in Part; and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Jennifer L. Chadwell, Oak Ridge, Tennessee, for the appellant, Bobby G.[1]

Allison M. Rehn, Harriman, Tennessee, for the appellees, Alison T. and Marcio T.

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names to protect their identities.

## OPINION

## I. Background

Alison T. ("Mother") is the biological mother of Bobby G., Jr. (the "Child"), who was born in March 2006. In November 2009, Mother married Marcio T. (together with Mother, "Appellees"). Appellant Bobby G., who is currently incarcerated in Kentucky, is the Child's biological father.

Turning to Appellant's criminal history, on or about May 30, 2003, Appellant entered a plea of guilty and was convicted on ten (10) criminal charges including: (1) two counts of Robbery 1st Degree; (2) four counts of Robbery 2nd Degree; (3) one count of carrying a concealed deadly weapon; (4) one count of Fleeing and Evading 2nd Degree; (5) one count of Minor in Possession of a Handgun; and (6) one count of Possession of Marijuana. Appellant was originally sentenced to a total of twenty-five years. However, on April 23, 2004, Appellant was granted probationary release. Within one week of his release, on April 29, 2004, Appellant was charged with five new criminal counts, including: (1) Possession of a Handgun by a Convicted Felon (a Class C felony); and (2) Receiving Stolen Property (a Class B felony). Appellant failed to appear for a hearing on July 23, 2004; his bail was revoked, and a warranted was issued for his arrest on July 27, 2004. The April 29, 2004 charges were later dismissed, and Appellant was reinstated to probation, during which period the Child was born. However, when the Child was almost fourteen-months old, on or about May 4, 2007, Appellant was found to have "violated the terms of his probation by failure to report to Probation Officer as directed, and failure to comply by absconding supervision." As a result, his probation was revoked, and Appellant was ordered to "serve out the indeterminate sentence of twenty-five (25) years in the State Penitentiary at hard labor." Appellant has been incarcerated since that time.

During his incarceration, Appellant attempted to contact the Child through letters; however, Mother rejected these mailings, and the Child never received them. Furthermore, when the Child was approximately seven years old, Mother terminated all visits with Appellant.

On July 28, 2020, in the Chancery Court for Anderson County ("trial court"), Appellees filed a petition to terminate Appellant's parental rights and for step-parent adoption. On September 17, 2020, Appellant filed a pro se answer in opposition to the petition. Thereafter, in September 2020, the trial court appointed an attorney to represent Appellant and a guardian ad litem to represent the Child. Appellant's attorney filed a formal answer to the Petition on July 13, 2021.

The trial court heard Appellees' petition on November 4, 2021. By order of November 16, 2021, the trial court terminated Appellant's parental rights on the grounds

of abandonment by an incarcerated parent by failure to support and by wanton disregard, and incarceration as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court. The trial court also found, by clear and convincing evidence, that termination of Appellant's parental rights is in the Child's best interest. Appellant appeals.

## II. Issues

We restate the dispositive issues as follows:

1. Whether Appellant's right to due process was violated when he participated in the hearing by telephone.
2. Whether there is clear and convincing evidence to support the trial court's termination of Appellant's parental rights on any of the statutory grounds found by the trial court.
3.  If so, whether there is clear and convincing evidence that termination of Appellant's parental rights is in the Child's best interest.

## III. Standard of Review

The Tennessee Supreme Court has previously explained that:

A parent's right to the care and custody of [his or] her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clause of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522-23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute, which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL

1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g))). Thus, a party seeking to terminate a parent's rights must prove: (1) the existence of one of the statutory grounds; and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination of parental rights cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W.3d at 523-24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)); *In re M.L.P.,* 281 S.W.3d 387, 393 (Tenn. 2009); *In re A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). The Tennessee Supreme Court has explained that:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re* [*A.M.H.*], 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 524. With the foregoing in mind, we turn to our review.

### IV. Due Process

As an initial issue, Appellant argues that he was deprived due process based on the fact that his participation at the hearing was telephonic, and there were issues with the connection that allegedly interfered with his hearing of all the proceedings. Tennessee Code Annotated section 36-1-113(f) provides, in relevant part that

> the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian

should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances.

Tenn. Code Ann. § 36-1-113(f)(3). The statute further provides that, "if the incarcerated parent or guardian wishes to participate in the hearing and contest the allegation, such parent or guardian . . . [i]f indigent, will be provided with a court-appointed attorney to assist the parent or guardian in contesting the allegation." Tenn. Code Ann. § 36-1-113(f)(4). Here, it is uncontested that Appellant was represented by counsel who was present during the hearing.

Although Appellant's participation by telephone is contemplate under Tennessee Code Annotated section 36-1-113(f)(3), on appeal, Appellant argues that he was deprived of his right to participate in the hearing because he could not hear all of the proceedings. Despite Appellant's arguments, from our review of the transcript, any issues that compromised Appellant's participation in the hearing appear to have been resolved.

Before the hearing started, the trial court stated:

THE COURT: Okay. All right. So because we're dealing with someone on speakerphone here, we need to make sure that we are speaking into microphones today so that it will go through the courtroom's sound system so he can hear us. So let's make sure that we're doing that, or if you're making an objection or something from the table, speak nice and clearly and loudly for him. Okay? All right. [Appellant], again I'm going to give you the instruction that if for some reason you can't hear us—I've instructed everybody to use the microphones in the courtroom—but if for some reason something happens and you can't hear, let us know so that we can have it repeated so that you can fully participate in this hearing. Okay?
[Appellant]: Yes, ma'am.
THE COURT: All right. Thank you.

Mother was called as the first witness, and the trial court asked Appellant, "Can you hear her," to which he replied, "Yes, ma'am." At one point during Mother's testimony, Appellant interjected, "I'm having trouble hearing the testimony going back and forth." The trial court immediately instructed: "Everybody make sure that you're speaking loudly, and let's make sure that we're not speaking over each other. Let's try that again. Repeat the question . . . . ." Then, after Mother answered the question, the trial court asked Appellant, "Is that better," to which he replied, "Yes." Then, a few minutes later, Appellant again stated, "Excuse me. I'm [] having trouble hearing Alison's responses and testimony. I'm understanding the lawyer, but I can't understand Alison." The trial court immediately asked Mother to move closer to the microphone and asked that the witness microphone be

turned up.

In addition to the foregoing interchanges, Appellant cites seven other sections of the transcript where he allegedly states that he cannot hear the proceedings. All of these citations to the record involve Appellant being asked a question and then saying, "Excuse me," after which the question is repeated, and Appellant answers. After the initial complaint of not being able to hear Mother's testimony, there is only one additional section of the transcript where Appellant specifically states, "Could you repeat the question. I couldn't hear you." The question was repeated, and Appellant answered. It appears, therefore, that any issues with Appellant's connection to the hearing were addressed and resolved immediately such that he was able to fully participate in the hearing. Furthermore, neither Appellant, nor his attorney, asked the trial court to continue the hearing or for any other relief. This fact, coupled with Appellant's attorney's presence at the hearing and the trial court's adjustments throughout the hearing, fully satisfies the requirements of section 36-1-113(f), and there is no basis for reversal on this issue.

### V. Grounds for Termination of Parental Rights

Although only one ground must be proven by clear and convincing evidence in order to terminate a parent or guardian's parental rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d at 251 n.14. Here, the trial court terminated Appellant's parental rights on grounds of: (1) abandonment by an incarcerated parent by failure to support and by wanton disregard; and (2) incarceration as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court. We will address each ground.

### A. Abandonment by an Incarcerated Parent

The trial court found, by clear and convincing evidence, that Appellant abandoned the Child. Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

As is relevant to this appeal, Tennessee Code Annotated section 36-1-102(1)(A)(iv) defines abandonment, in pertinent part, as follows:

> (iv) A parent . . . is incarcerated at the time of the filing of a proceeding,

pleading, petition, or amended petition to terminate the parental rights of the parent . . . of the child who is the subject of the petition for termination of parental rights or adoption, or a parent . . . has been incarcerated during all or part of the four (4) consecutive months immediately preceding the filing of the action and has:

(a) Failed to visit, has failed to support, or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding the parent's or guardian's incarceration;

(b) Failed to visit, has failed to support, or has failed to make reasonable payments toward the support of the child during an aggregation of the first one hundred twenty (120) days of non-incarceration immediately preceding the filing of the action; or

(c) Has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv)(a)-(c). For purposes of this subdivision "'failed to support' or 'failed to make reasonable payments toward such child's support' means the failure to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period." Tenn. Code Ann. § 36-1-102(1)(D). "'[T]oken support' means that the support, under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B).

This Court has "indicated that the above definition 'contains multiple ways of abandonment for termination of parental rights.'" *In re Navada N.*, 498 S.W.3d 579, 598 (Tenn. Ct. App. 2016) (citing *In re Kierra B.*, No. E2012-02539-COA-R3-PT, 2014 WL 118504, at *8 (Tenn. Ct. App. Jan. 14, 2014)). We have explained that incarceration is a condition precedent for this definition of abandonment:

[A]bandonment by an incarcerated parent may only apply where the parent . . . "is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding."

*Id*. (citing Tenn. Code Ann. § 36-1-102(1)(A)(iv)).

In its order terminating Appellant's parental rights, the trial court found that

[Appellant] has abandoned the child in that he was incarcerated during the entirety of the four (4) months preceding the filing of this action, he has engaged in conduct prior to incarceration that exhibited a wanton disregard

for the welfare of the child, and he has failed to support the child or make reasonable payments for the support of the child for four (4) consecutive months immediately preceding his incarceration. Specifically, the Court finds that there is no evidence that the [Appellant] financially supported the child prior to incarceration and only provided token payments in 2008 after incarceration. The Court finds that [Appellant] had the [Appellees'] address and saved up funds in his inmate account but failed to provide child support during the four months preceding the filing of this action.

On appeal, Appellant argues that the trial court applied the incorrect statutory time period in finding that he abandoned the Child by failure to support. Appellant has been incarcerated continuously since May 4, 2007. The petition to terminate his parental rights was filed on July 28, 2020. As such, the correct statutory time period would be either the "four (4) consecutive months immediately preceding [Appellant's] incarceration, or "an aggregation of the first one hundred twenty (120) days of non-incarceration immediately preceding the filing of the action." Tenn. Code Ann. §§ 36-1-102(1)(A)(iv)(a)-(b). Here, Appellant's incarceration began on May 4, 2007; as such, under either definition above, the applicable time period would be January 4, 2007 through May 3, 2007, which is the four-month period immediately preceding Appellant's incarceration and also the first 120-days of non-incarceration preceding the filing of the action. As set out in context above, the trial court held that Appellant "failed to support the child or make reasonable payments for the support of the child **for four (4) consecutive months immediately preceding his incarceration**" (emphasis added). Although it appears that the trial court initially considered the relevant time period, its order goes on to state that Appellant "only provided token payments in **2008 after incarceration**" (emphasis added). As discussed above, the relevant time period does not include 2008, or any period of Appellant's incarceration. Although the trial court did not specify the relevant dates in its order, it did conclude that "there is no evidence that the [Appellant] financially supported the child prior to incarceration."

However, even if we allow, *arguendo*, that the trial court considered the correct time period, from our review of the record, the only evidence concerning whether Appellant supported the Child prior to his incarceration is Mother's testimony:

Q. Prior to him being incarcerated, was he providing any type of financial support or paying any bills for you prior to him going to jail?
A. Not necessarily paying bills. We stayed with his mom for a little bit. But other than that, no.
Q. Okay. So he wasn't, like, paying rent or paying the water bill or anything like that?
A. No. He wasn't providing.

During his testimony, Father indicated that he paid small amounts from his inmate account

until 2008 (which is not the relevant time period), but he was not asked about any support paid prior to his incarceration. In view of the fact that the trial court did not specify the correct time period in its order, and in view of the sparsity of the evidence concerning any support Appellant may have provided during the relevant period, the evidence does not clearly and convincingly support the trial court's finding that Appellant failed to provide support from January 4, 2007 through May 3, 2007. As such, we reverse the trial court's termination of Appellant's parental rights on the ground of abandonment by an incarcerated parent by failure to support.

However, as to the ground of abandonment by an incarcerated parent by wanton disregard, there is ample evidence to support the trial court's termination of Appellant's parental rights on this ground. As discussed in detail above, Appellant was granted probation on his twenty-five-year sentence and was on probation when the Child was born in March 2006. However, just over a year later, Appellant violated his probation and was incarcerated to serve the remainder of his sentence. In other words, although Appellant had an opportunity to remain active in this Child's life, his decision to violate his probation completely negated that opportunity. Appellant's decision not to avail himself of this opportunity clearly shows a wanton disregard for the Child's welfare.

### B. Ten Year Incarceration

Tennessee Code Annotated section 36-1-113(g)(6) provides that a ground for termination of parental rights is established when:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Tenn. Code Ann. § 36-1-113(g)(6).

> In its order terminating Appellant's parental rights, the trial court found that

> Father has been sentenced and subject to confinement in a correctional or detention facility by order of the court as a result of a criminal act under a sentence of ten (10) or more years and the minor child was under the age of eight (8) years at the time the sentence was entered by the Court. Specifically, the Father's probation was revoked on May 4, 2007, at which time he was sentenced to serve the remainder of his previous twenty-five (25) years.

It is undisputed that Appellant's probation was revoked when the Child was fourteen months old, and Appellant was sentenced to serve the remainder of his twenty-five-year

sentence. As such, the criteria for this ground are met by clear and convincing evidence.

Although we reverse the trial court's termination of Appellant's parental rights on the ground of abandonment by an incarcerated parent by failure to support, we affirm the trial court's termination of his parental rights on all remaining grounds. Tenn. Code Ann. § 36-1-113(c) (stating that a party seeking to terminate a parent's rights must prove the existence of at least one of the statutory grounds).

## VI. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *In re Bernard T.*, 319 S.W.3d at 606 (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793 at 809). As the Tennessee Supreme Court explained:

> Facts considered in the best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d at 555 (citing *In re Audrey S.*, 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *Id*. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. *Id*. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to this appeal, these factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> ***
>
> (3) Whether the parent or guardian has maintained regular visitation or other

- 10 -

contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

\*\*\*

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

\*\*\*

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). This list of factors is not exhaustive, nor does the statute "require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W. 3d 652, 667 (Tenn. Ct. App. Aug. 11, 2005), *perm. app. denied* (Tenn. Nov. 21, 2005). Each termination of parental rights case includes different circumstances, and the consideration of a single factor or other factors outside those enumerated in the statute, may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

Ascertaining a child's best interests . . . does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s [ ] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 1994). However, "[w]hen considering the factors set forth in subdivision (i)(1), the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tenn. Code Ann. § 36-1-113(i)(2).

In its order terminating Appellant's parental rights, the trial court acknowledged that

Appellant "has taken advantage of parenting classes and many other classes and education made available to him during his incarceration, and "did attempt to keep in contact with his child vial telephone and mail." The trial court further acknowledged that Appellant's "failure to maintain contact was not willful as the Mother did not allow the [C]hild to visit the Father or have contact with Father as she was concerned about the child forming a relationship with a person she knew was never going to be able to be there for him due to his long prison sentence." Nonetheless, the trial court found that the majority of the relevant best interest factors weighed against Father, to-wit:

> d. The Father has failed to establish and maintain a meaningful relationship with the child. The child was one years of age when the Father went to prison and he has not been out since that time. It is uncontested by Father that he does not have any relationship with the child at this time.
> e. The effect a change of caretakers and physical environment is likely to have a negative effect on the child's emotional, psychological, and medical condition. The child has lived with mother and stepfather his entire life, is bonded with his family that includes siblings, and desires for this adoption to take place.

> ***

> f. The physical environment of Father's home is not appropriate as may render the Father consistently able to care for the child in a safe and stable manner. The Father remains incarcerated and has no home other than prison.

> ***

> i. The Father has paid only a minimal amount of token support in 2008.

> j. The Court considered the other following factors: the child desires for the adoption to occur, the length and strength of the child's relationship with his stepfather, and the other siblings in the same home being the legal and biological children of the [Appellees].

For many of the foregoing reasons, the trial court's findings are supported by clear and convincing evidence. At the time of the hearing, the Child was fifteen. Trial Exhibit 2 is the Child's sworn, written consent, wherein he states his belief that it is in his best interest for Appellant's parental rights to be terminated so that he can be adopted by his step-father. Although the Child did not testify at the hearing, the step-father explained that Appellees waited until the Child could form his own opinion concerning termination of his biological father's parental rights and adoption before proceeding with their petition. Both Appellees testified separately that the Child wished to be adopted by step-father and to fully integrate into the home he shares with Appellees and his two half-siblings. Frankly,

the Child has never known any other home. Mother testified that she and step-father began their relationship in 2007, when the Child was just one year old. Although Appellant attempted to maintain some contact with the Child, the Child's young age at the time of Appellant's incarceration resulted in the Child having no meaningful relationship with Appellant. Rather, from the evidence, the Child has a strong bond with his step-father, and the step-father has assumed the role of father in this Child's life. The Child has clearly expressed his desire to be adopted, and the continuation of any relationship with Appellant will only delay the Child's full integration into the only home he has ever known. For these reasons and more, there is clear and convincing evidence that termination of Appellant's parental rights is in the Child's best interest.

## VII. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Appellant's parental rights on the ground of abandonment by an incarcerated parent by failure to support. We affirm the trial court's termination of Appellant's parental rights on the remaining grounds and on its finding that termination is in the Child's best interest. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Bobby G. Because Bobby G. is proceeding *in formal pauperis* in this appeal, execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE